IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                 CASE NO. 21-01560 (ESL)

DIANA JOSEFINA PADILLA IBANEZ          CHAPTER 13

Debtor

## OPINION AND ORDER

This case is before the court upon the *Motion for Summary Judgment* filed by the Debtor, Diana Josefina Padilla Ibanez (Docket No. 62); the *Reply and Opposition to the Motion for Summary Judgment filed by Debtor* filed by Condominio Alturas del Parque (Docket No. 69)*;* and Debtor's Reply and Opposition to "Reply and Opposition to Motion for Summary Judgment" filed by Consejo de Titulares (Docket No. 77).

## Relevant Procedural History

On May 19, 2021, the Debtor Diana Josefina Padilla Ibanez filed a Chapter 13 voluntary petition (Docket No. 1). On the same date, the Debtor filed a Chapter 13 plan which requested the court to determine the value of two secured claims: claim of Consejo de Titulares Alturas del Parque in the amount of $14,561.86 and Parque Escorial Residential Owners in the amount of $4,000.00 (Docket No. 2). On July 22, 2021, the Debtor filed the following: (1) *Motion to Determine Value of Security and Consejo Titulares Alturas del Parque Secured Claim* (Docket No. 18); and (2) *Motion to Determine Value of Security and Parque Escorial Residential Owners Association Allowed Secured Claim* (Docket No. 19). The Debtor stated that is the owner of the property listed in Schedule A identified as "COND ALTURAS DEL PARQUE ESCORIA, CAROLINA, PR, 00987." The Debtor argues that the estate has an interest in the property in the amount of $111,500.00. However, the property is encumbered by a secured lien in the amount of $97,023.48 in favor of Banco Popular de Puerto Rico (proof of claim no. 3) and a secured lien in the amount of $21,564.76 in favor of the U.S. Department of Housing (proof of claim no. 1).

Therefore, the Debtor proposes to strip off the liens in favor of Consejo de Titulares Alturas del Parque ("Consejo") and Parque Escorial Residential Owners Association; and to treat them as wholly unsecured claims.

On August 23, 2021, Consejo de Titulares de Alturas del Parque ("Consejo") filed its *Reply and Opposition to "Motion to Determine Value of Security and Consejo de Titulares Alturas del Parque Secured Claim* (Docket No. 29). Consejo argues that it holds a statutory lien that cannot be subject to avoidance, alteration or any action that may affect or vary its value. Consejo references Law No. 103 of April 5, 2013, by which the owners of condominiums converted to a horizontal property regime are obliged to contribute to the expenses necessary to adequately maintain the common areas. The collection of maintenance fees serves to preserve the best conditions of the communal element, facilitate its use, and guarantee the proper functioning of the regimen. On August 16, 2020, a new condominium law was enacted which contains the following provision in Article 60: "[a]n apartment owner's liability for his percentage of interest in the common expenses shall constitute a lien on said apartment. […] Said liability shall be due and payable from whomever is the owner of the property comprising the apartment, even if it has not been yet segregated and recorded as a filial estate in the Property Registry, or alienated in favor of any person. […]." The previous law contained a similar provision. Consejo argues that the law establishes a statutory lien in its favor. Consejo's lien arises solely by force of the state law. Said contention is supported by Debtor's schedule D where the debt was listed as secured. The Creditor argues that there are no circumstances that merit avoidance pursuant to section 545.

On August 23, 2021, the Debtor filed an amended plan dated 08/20/2021, which was modified "to provide 100% + 3.25% to allowed general unsecured claims". The debtor's request for valuation of claims was maintained in the amended plan (Docket No. 30).

On August 29, 2021, Condominium Alturas del Parque filed its *Motion to Request Leave to File Proof of Claim as to Alturas del Parque Claim* (Docket No. 39). The Condominium argues that it did not received notification of the bankruptcy case and assumes that notification sent must have been lost during the pandemic and the chaotic events related to the mailing service. The condominium requests leave from the court to file a late claim. The deadline to file proof of claims for non-governmental creditors was set for July 28, 2021. On August 30, 2021, Consejo filed its proof of claim no. 5-1, for the amount of $14,572.73.73 and including post-petition fees in the amount $1,042.73.

On August 30, 2021, Condominium Alturas del Parque ("Consejo") objected the amended plan (Docket No. 40). The Creditor argues that the amended plan fails to provide for payment of the pre-petition arrears of maintenance fees for the Alturas del Parque Condominium. The plan does not recognize the statutory lien created by Law No.129. "The "creation" or "individualization" of the apartment is made by the registration of a Deed to create the Horizontal Property Regimen and it is senior to Banco Popular's mortgage… Therefore, the obligation to pay the maintenance fees is senior to the mortgage and need to be recognized as such." The maintenance fee is a statutory obligation pursuant to 11 U.S.C. 101(53). The Creditor further argues that the plan does not provide for the payment of the post-petition maintenance fees, the Debtor has not made any post-petition maintenance fees and debtor fails to comply with section 1322.

On September 20, 2021, the Debtor filed her *Opposition to Motion to Request Leave to File Proof of Claim as to Alturas del Parque Claim* (Docket No. 50). The Debtor argues that the Fed. R. Bankr. P. 3002(c) provides seven enumerated exceptions to the timely filing of a proof of claim, and that none are present in this case. Through certificate of service at docket no. 8 it is certified that notice was sent through mail to Consejo's address. Aditionally, a certificate of service regarding the chapter 13 plan dated May 12, 2021, certifies notice to Consejo's address. Furthermore, the Debtor certifies notice of plan dated May 12, 2021 on May 25, 2021 at docket no. 12. The address included in all certificates of service is the same address provide by Consejo in its proof of claim. "The Consejo cannot claim that it did not receive any notification of the filing of the filing of the bankruptcy case, when the certificates of service evidence the contrary." The debtor references Hoefs v. CAVC of Colorado, LLC, 365 F.Supp., 2d 69, 72-73 (D. Mass. 2005) the court stated that: "the "mailbox rule" is "a settled feature of the federal common law" and "provides that the property and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." The Debtor argues that Consejo has failed to rebut the presumption of receipt. "Consejo has not indicated that the above[-]mentioned address is not their address and/or that it is incorrect." The Debtor argues that neither Fed. R. Bankr. P. 3002(c)(6)(A) or 3002(c)(6)(b) are applicable as there was neither a delay to timely file the list of creditors' names and addresses nor notice was mailed to the creditor at a foreign address.

On November 23, 2021, the Debtor filed her *Statement of Uncontested Facts in Support of Debtor's Motion for Summary Judgment* (Docket No. 61). On the same date, the Debtor filed her *Motion for Summary Judgment* (Docket No. 62). The Debtor alleges that her home provides no

-3-

equity for the allege security interest claimed by Consejo de Titulares Alturas del Parque on proof of claim no. 4, and that it is not a secured creditor, notwithstanding the alleged statutory lien because Debtor's property provides no equity to grant a secured status pursuant to 11 U.S.C. §506. By the same reasoning Parque Escorial Residential Owners Association is also an unsecured creditor that did not file a proof of claim. The Debtor seeks summary judgment as there are no genuine issues as to any material facts.

Proof of Claim no. 5, claims an alleged secured status and informs that its purportedly secured status is predicated on Puerto Rico Law 129 of 2020, which was signed into law on August 16, 2020. Presumably, under the same argument Parque Escorial Residential Owners Association has a lien encumbering Debtor's property. However, prior to August 16, 2020, condominium maintenance fees were not liens, thus unsecured, as determined by the Supreme Court of Puerto Rico in the case of Vazquez Morales v. Caguas Federal Savings & Loan Assosiation of P.R., 118 D.P.R. 806, (1987).

The Debtor recognizes a legal lien, subject to 11 U.S.C. §506, by and Parque Escorial Residential Owners Association and Alturas del Parque, as claimed in Proof of Claim no. 5, but only for amounts owed after August 16, 2020, and only for maintenance fees dues, and not for interests, costs, other fees and charges. Alturas del Parque has not provided any legal citation, sustaining the retroactive effect of Law 129.

As alleged by the Debtor, section 506(a)(1) governs the value of a secured claim and the determination of whether any portion of a creditor's claim should be classified as a secured claim. Referencing Assocs. CommercialCorp.v.Rash, 520 U.S. 953 (1997), the Debtor states that "a secured creditors' claim is to be divided into secured and unsecured portion, with the secured portion of the claim limited to the value of the collateral… to separate the secured from the unsecured portion of a claim, a court must compare the creditor's claim to the value of such property, 'i.e., the collateral."

Furthermore, section 1322 of the Bankruptcy Code provides that the Debtor's Chapter 13 plan may modify the rights of holders of most secured claims, other than some claims secured only by a security interest that is the Debtor's principal residence. "The scope of section 1322(b)(2) includes creditors whose claims are wholly or partially secured by a debtor's principal residence. The U.S. Supreme Court explained that among the secured creditors whose claims cannot be modified under the aegis of section 1322(b)(2) are creditors whose claims are partially secured, namely claims that can be stripped down to the value of the collateral under section 506(a).

-4-

Nobelman v. American Savings Bank, 508 U.S. 324 (1993)." However, the holding does not apply in cases where a junior lien is totally under secured considering senior liens that equal or exceed the value of a debtor's principal residence. "In the instant case, the Debtor's property has a fair market value of $111,000.00 [SUF ¶11], with a first mortgage lien in the amount of $97,023.48 with Banco Popular de Puerto Rico, [SUF No. 9], and a second mortgage with the U.S. Department of Housing and Urban Development in the amount of $21,564.76, [SUF No. 10]." "The alleged Alturas del Parque's lien, in any amount, is totally under secured, as the senior liens exceed the fair market value of Debtor's property. By the same token, and Parque Escorial Residential Owners Association will also be unsecured. This is not to say, that we recognize a secured lien in the amount claimed in Proof of Claim no. 5, but that even if it was legally a lien on property, *arguendo*, it would not be a secured creditor under section 506."

On December 16, 2021, Consejo de Titulares of the Alturas del Parque Condominium ("Consejo" or "Condominium") filed its *Creditor's Statement of Uncontested Facts in Compliance with Order and in Support of Reply to Debtor's Motion for Summary Judgment* (Docket No. 68). On the same date, Consejo filed its *Reply and Opposition to "Motion [] for Summary Judgment" filed by the Debtor* (Docket No. 69). The Condominium argues that the obligation to contribute to the common expenses of the condominium constitutes a statutory lien and, therefore, the plan must provide for the payment of pre-petition arrears. Consejo states that "[s]ince the adoption of the first Condominium Law on June 25,1958 our jurisdiction recognized that the obligation to contribute to the common expenses by way of a "maintenance fee" created a lien over the property." Furthermore, Consejo argues that, as evidenced by the Sworn Title Search Report (Exhibit A), the Horizontal Regime was constituted prior to the sale of the apartment and, consequently, Consejo's lien is senior to any other lien. The Creditor re-argues that none of the circumstances present in section 545 are applicable to the case. Consejo lastly pledges: "In order for the horizontal regimen to operate adequately the paying of fees is imperative. In this case, Debtor has enjoyed the benefits of living in a horizontal regime without contributing to the same. If many residents incurred in the same practice the condominium regimes will fail and it will pose a serious problem for our society. That is what moved the legislature to create a statutory lien to protect the condominiums."

On January 19, 2022, the Debtor filed her *Debtor's Reply and Opposition to "Reply and Opposition to Motion for Summary Judgment" filed by Consejo de Titulares* (Docket No. 22). The Debtor challenges arguments made by Consejo which assume that amounts owed prior to August

-5-

16, 2020 are secured. The Supreme Court of Puerto Rico, established that a debt for maintenance fees under the horizontal property regime, prior to August 16, 2020, must be recorded in the property registry in order to become a lien. See Vazquez Morales v. Caguas Federal Savings & Loan Assosiation of P.R. The Supreme Court's opinion applies, even after the new law because the statutory regime of Puerto Rico does not allow for secret or hidden liens, see Vazquez Morales v.Caguas Federal Savings & Loan Association of P.R., supra. See In re Hernandez, 10–07347-EAG, (D. Puerto Rico 2014), 2014 WL 3534703. The Debtor does not admit that horizontal property dues are secured under the new legal regime, but for the sake of simplicity of the controversy before this Honorable Court, she did not challenge the secured status of horizontal property dues owed after August 16, 2020 but reserved the right to challenge them if necessary. However, even if the debt was in any portion secured, said fact is unnecessary to resolve the controversy to rule on whether the value of property supports the claim based on the §506(a) analysis. The holder of an underwater lien does not have a secured lien, and thus, the lien may be modified under §1322(b)(2).

Issue

The court must determine whether Consejo has a statutory lien or security interest pursuant to the repealed Law of Horizontal Property, Law No. 104 dated June 19, 1958, as amended; or the new Puerto Rico Horizontal Property Act dated August 167, 20202; and, if it does, the court must determine if the Debtor may strip liens off, as liens are totally under secured and, therefore, not secured creditors under 11 U.S.C. §506.

RELEVANT UNCONTESTED FACTS

After considering the totality of the record, the court finds that the following facts are uncontested:

1. The Debtor is the owner of real property described as Condominio Alturas del Parque, Edif. B Apt. 1506, Carolina, P.R. ("the property"). See Title Study, Exhibit I, Docket No. 61.
2. Banco Popular has a secured mortgage over the property in the amount of $97,023.48. See Proof of Claim 3-1; Title Study, Exhibit I, Docket No. 61.

3.  The U.S. Department of Housing and Urban Development has a secured mortgage in the amount of $21,564.76. See Proof of Claim 1-1; Title Study, Exhibit I, Docket No. 61.

4.  As per appraisal dated October 15, 2021, prepared by Jose R. Colon Diaz, General Certified Real Estate Appraiser, the property has an estimated value of $111,000.00. Exhibit 4, Docket No. 61.

5.  The property is part of a horizontal property regime which was presented at the Property Registry on July 14, 2000, and recorded on February 26, 2002.

Applicable Law and Analysis

a.  *Standard of Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." *Id*. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. *Id*. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party must "show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 96 S. Ct. 1495, 47 L. Ed. 2d 754 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61, 284 U.S. App. D.C. 391 (D.C. Cir. 1990), cert. denied, 498 U.S. 958, 111 S. Ct. 387, 112 L. Ed. 2d 397 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The

-8-

nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

  b.  *Does the Puerto Rico Horizontal Property Act ("La Ley de Condominios de Puerto Rico") creates a statutory lien with respect to common expenses fees?*

On August 16th 2020, the new Puerto Rico Horizontal Property Act was enacted with the purpose of updating the norms that regulate cohabitation in condominiums. The law derogated the previous Law No. 104 dated June 19, 1958, and all its amendments. Pursuant to the legislative explanatory memorandum, the new law attempts to harmonize the condominium regulation with the current times and the different judicial interpretations of the law issued by the Supreme Court of Puerto Rico.

As pertinent to our controversy, the new Act of 2020 states:

"Section 60.- Liability of Owner for Common Expenses, Lien.

An apartment owner's liability for his percentage of interest in the common expenses shall constitute a lien on said apartment. Therefore, after the first sale, the voluntary acquirer of an apartment shall be jointly and severally liable with the transferor for the payment of any unpaid amounts by the transferor, in accordance with Section 59, up to the time of the conveyance, without prejudice to the right of the acquirer to recover from the transferor those amounts paid as a joint debtor. However, an involuntary acquirer shall only be liable for debts on account of unpaid common expenses accrued during the six (6)-month period prior to the time of acquisition of the property, except for any amounts pertaining to late fees, assessments, interests, and penalties attributable to the owner, and shall include the current balance accrued from the acquisition of said property by the involuntary acquirer.

Said liability shall be due and payable from whomever is the owner of the property comprising the apartment, even if it has not been yet segregated and recorded as a filial estate in the Property Registry, or alienated in favor of any person. Any financial institution that provides interim Financing to a person for the construction of apartments and common elements to be submitted to the Horizontal Property Regime and obtains title to the property as a result of a foreclosure or by deed in lieu of foreclosure shall not be deemed to be a Developer, as Interim Administrator, or a declarant of the regime, pursuant to the provisions of this Act; provided, that the financial institution does not exceed the usual duties of a creditor in protecting its security interest, in accordance with the commercial practices followed by financial institutions providing interim construction financing.

Section 61.- Exceptions for Priority of Liens Against Owners.

The lien against any owner on account of an apartment owner's liability for his percentage of interest in the common expenses, referred to in Section 59 of this Act, shall have priority over any other lien of whatever nature, except for the following:

a) Liens in favor of the Government of Puerto Rico and the respective municipality for the sums of the last five (5) annual tax assessments and the current tax assessment, overdue and unpaid on the apartment.

b) For the insurance premium for the last two (2) years of the apartment, or the total property, as the case may be, and in the case of common insurance, for the last two (2) dividends distributed.

c) Mortgages recorded in the Property Registry." [1]

---

[1] Artículo 60.-Obligación del Titular por Gastos Comunes, Gravamen

La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. Un adquirente involuntario será responsable solamente de las deudas por gastos comunes surgidas y no satisfechas durante los seis (6) meses anteriores al momento de adquirir la propiedad excepto las partidas correspondientes a penalidades por atrasos o mora, derramas, intereses y sanciones atribuibles al titular, incluirá el balance corriente que se acumule desde la adquisición de dicho inmueble por parte del adquiriente involuntario.

La referida obligación será exigible a quien quiera que sea titular de la propiedad que comprende el apartamento, aun cuando el mismo no haya sido segregado e inscrito como finca filial en el Registro de la Propiedad, o enajenado a favor de persona alguna.

Cualquier institución financiera que provea un financiamiento interino a una persona para la construcción de apartamentos y elementos comunes a ser sometidos o sometido al Régimen de Propiedad Horizontal y se convierta en dueño del inmueble en un procedimiento de ejecución o dación en pago, no será considerada como Desarrollador, Administrador Interino o constituyente del régimen conforme dispone esta Ley, siempre y cuando la institución financiera no rebase sus funciones usuales de un acreedor en la protección de su garantía de conformidad con las prácticas comerciales seguidas por instituciones financieras que proveen financiamiento interino de construcción de entidad financiera.

Artículo 61.-Excepciones a la Preferencias de Créditos Contra Titulares

El crédito contra cualquier titular por la obligación del titular de un apartamento por su parte proporcional de los gastos comunes que hace referencia el Artículo 59 de esta Ley, tendrá preferencia sobre cualquier otro crédito de cualquier naturaleza excepto los siguientes:

a)    Los créditos a favor del Gobierno de Puerto Rico y la correspondiente municipalidad por el importe de las cinco (5) últimas anualidades y la corriente no pagada, vencidas y no satisfechas de las contribuciones que graviten sobre el apartamento.

b)    Por la prima del seguro de dos (2) años, del apartamento o del inmueble total, en su caso, y si fuese el seguro mutuo por los dos (2) últimos dividendos que se hubiesen repartido.

c)    Los créditos hipotecarios inscritos en el registro de la propiedad.

-10-

New Section 60 essentially kept the same language of its predecessor Article 41. Specifically, the law states that an apartment owner's liability for his percentage of interest in the common expenses shall constitute a "lien" on said apartment. However, predecessor Article 41 specifically stated that it would become a lien *"as soon as it is registered in the Property Registry".* Although the phrase was part of the last amended Article 41, it wasn't always included in the section.

The initial Horizontal Property Law, Law No. 104, was enacted on June 25, 1958. 31 L.P.R.A. 1293 et seq, and was amended multiple times throughout the year, until its recent derogation in 2020. Articles 41 and 39 have been thoroughly addressed by the Supreme Court of Puerto Rico in the development of the figure of the "involuntary acquirer". *See* Condominio First Fed. Sav. v. LSREF2 Island Holdings LTD , 2019 TSPR 128, 202 P.R. Dec. 934; Coop. de Ahorro Y Crédito Oriental v. Consejo de Titulares Cond. , 2016 TSPR 79, 195 P.R. Dec. 330; Vázquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R. , 118 P.R. Dec. 806 (1987).

Initially, Article 41 read as follows:

> "The acquirer of an apartment shall be jointly and severally liable with the conveyer for the amounts owing by the latter under Section 39 of this Act up to the time of the conveyance, without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor. 31 L.P.R.A. § 1293e."

> See Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88 (1977)

Furthermore, Article 40 stated:

> "The credit against any co-owner for his share in the expenses to which Section 39 of this Act refers shall have preference over any other credits of whatever nature but the following:

> "(a) Credits in favor of the Commonwealth and the corresponding municipality for the taxes of the last five annual assessments and the unpaid current one, overdue and unpaid on the apartment.

> "(b) For two years premium on the insurance of the apartment, or of the whole property, as the case may be, and in the case of mutual insurance, for the last two dividends distributed.

> "(c) Mortgage credits recorded in the Registry of Property."

> See Ass'n of Co-Owners v. Naveira , 106 P.R. Dec. 88 (1977)

-11-

The purpose of article 41 was to turn the acquirer into a surety of the debtor. *Id*. At that point, no reference to a "lien" was part of Article 41. The reference to a "lien" was included to Article 41 through Act No. 157 of 1976, which amended Law No. 104 and stated:

"Article 41

The obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment. Therefore, the voluntary acquirer of an apartment shall be jointly liable with the conveyer for the amounts owing by the latter, pursuant to Section 39, up to the time of the conveyance, without prejudice to the acquirer's right to recover from the other party the amounts paid by him as such joint debtor.
The aforesaid obligation shall be enforcible on whoever may be the owner of the property containing the apartment, even if the same has not been segregated and recorded as a filial property in the Registry of Property, or alienated in favor of any person. (*31 L.P.R.A. § 1293e*.)

Ass'n of Co-Owners v. Naveira, 106 P.R. Dec. 88 (1977)

The Naveira Court expressed that: "[a]ct No. 157 of June 4, 1976 introduced a fundamental amendment to art. 41 upon ordering that "the obligation of the co-owner of an apartment for his proportionate share in the common expenses shall constitute a lien on said apartment." This provision is tantamount to declaring that a co-owner's liability for common expenses always follows the title to his apartment even with regard to expenses accrued prior to its purchase." Ass'n of Co-Owners v. Naveira , 106 P.R. Dec. 88 (1977).

However, in Vazquez Morales v. Caguas Fed. Sav. & Loan Assoc. of P.R., 118 P.R. Dec. 806 (1987), the court clarified the use of the term lien on Article 41:

"The amendment introduced by Act No. 157, in no way modified or eliminated the preference of credits provided in sec. 40 of the Act, 31 L.P.R.A. § 1293d.

Commenting on the amendment to sec. 41 of the Horizontal Property Act, Dr. Alberto Ferrer recommends "the elimination of the confusing term 'lien' in referring to debts involving common expenses; or the creation--if desired--of a new kind of 'Legal Mortgage,' which should be done in very clear and specific terms." A. Ferrer, Necesidad de reformar la Ley de Propiedad Horizontal de Puerto Rico 547 (November 1977).

On the other hand, the principles of publicity and specialty of the Registry of Property--sees. 101 and 87, 30 L.P.R.A. §§ 2351 and 2308--contained in the 1979 Mortgage

-12-

Law, Act No. 198, August 8, 1979, as amended, do not admit the existence of secret liens so, in order to become effective, the "lien" mentioned in sec. 41 must be recorded in the Registry of Property. If the lien is recorded in the Registry of Property, it would be subject to the provisions of Civil Code sec. 1827 (31 L.P.R.A. § 5212), and of Mortgage Law sec. 136 (30 L.P.R.A. § 2460), which cancel the lien on the real property if the proceeds of the sale are not sufficient to pay for the preferred credits.

Vazquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R. , 118 P.R. Dec. 806 (1987)

The Supreme Court's expressions were consistent with its determinations at that time: the voluntarily acquirer was jointly and severally liable with the conveyer for the amounts owing up to the time of the conveyance. However, the involuntary acquirer, or "those who become owners of [] apartments by exercising the preferred credit established in sub-divisions (a), (b), and (c) of art. 40 (31 L.P.R.A. 1293d) are "involuntary" acquirers and therefore, they are exempt from the liability for the common expenses of the condominium." *Id*. Throughout the years the definition of who is an involuntary acquirer has been developed by the Supreme Court of Puerto Rico, always upon the same query: is it responsible or not for paying accrued common expenses?

Article 41 was once more amended by Law 43-1996, through which the figure of the involuntary acquirer was incorporated to the law; and established that it was to be responsible for up to three (3) accrued common expense payments at the time of conveyance. See Asociacion de Condomines Galeria Profesional v. Condado 3Cr2, LLC, 2021 PR App. LEXIS 603 *13; 2021 WL 1561320 (2021).

Through a further amendment of article 41 in year 2003, the legislature imposed the responsibility to the involuntary acquirer for up to six (6) accrued common expense payments at the time of conveyance. Act No. 103 of 2003. *Id.* The legislature additionally included the phrase "as *soon as it is registered in the Property Registry"*. With the inclusion of the phrase "as *soon as it is registered in the Property Registry"* the legislature incorporated the Supreme Court's ruling in Vazquez Morales. The last amendment to Article 41 was made through Law No. 119-2016 to further delimit the categorization of an involuntary acquirer.

Upon the enactment of the new Horizontal Property Law of 2020, Law No. 104 dated June 19, 1958; as amended, was repealed. However, as stated before, Art. 61 retained the same overall language as previous amended Article 41, although the phrase *"as soon as it is registered in the Property Registry"* was left out of new Article 61. However, the interpretation of the Supreme Court of Puerto Rico in considering the common expenses as "liens" was regarding an Article 41 which did not included the phrase "…*as soon as it is registered in the Property Registry*". If the

legislature intended the creation of a "legal mortgage" or statutory lien, it has had ample opportunities to do so after the <u>Vazquez Morales</u> expression and should have stated it in clear terms in the new enacted law, as suggested by the Supreme Court of Puerto Rico.

Therefore, the Court finds that neither the repealed Law No. 104, as amended, nor the recent enacted Law No. 129 may be interpreted as creating a statutory lien considering the determination of the Supreme Court of Puerto Rico.  Common expenses debts are only secured as soon as they are registered in the Property Registry, albeit the continuous obligation of an owner to contribute as required by law. "[T]he lien contemplated by Article 41 of the Condominium Act is not self-perfecting; rather, in order to be perfected and for it to encumber the apartment, the lien must be recorded in the Registry of Property." 2014 Bankr. LEXIS 3036 *11; 2014 WL 3534703 (2014).

Conclusion

In view of the foregoing, the court finds that *Summary Judgment* in favor of the Debtor is warranted. Consejo is the holder of an unsecured claim pursuant to repealed Law No. 104, as amended, and the recently enacted Horizontal Property Law of 2020.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of January, 2022.

Enrique S. Lamoutte
United States Bankruptcy Judge